FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y
★ NOV 14 2014 ★
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
JANIE MARIE McFARLAND,

           Plaintiff,

  -against-

UNITED STATES,

           Defendant.
----------------------------------------------------------X

**ORDER**
12-CV-5162 (SJF)(SIL)

FEUERSTEIN, J.

On October 12, 2012, *pro se* plaintiff Janie Marie McFarland ("McFarland" or "plaintiff") commenced this action against defendant United States of America ("U.S." or "defendant") pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680, seeking to recover damages for negligence and medical malpractice. Defendant has moved for summary judgment which is granted in its entirety.

I.    Background

    A.    The 56.1 Statements

Both plaintiff and defendant have provided statements pursuant to Local Rule 56.1 Statement. [Docket Entry No. 32 ("Def. 56.1 Stmt."); Docket Entry No. 35 ("Pl. 56.1 Stmt.")]. Plaintiff's 56.1 statement does not comply with the Local Rules of this Court as the only paragraphs in the statement which contains citations to admissible evidence do not "respond[] to each numbered paragraph in the statement of the moving party." Local Rule 56.1(b).[1] "If the

---

[1] Local Rule 56.1 states in relevant part: "[e]ach statement by the movant or opponent pursuant to Rule 56.1(a) and (b), including each statement controverting any statement of material fact, must be followed by citation to evidence." Local Rule 56.1(d). "[W]here there are no[] citations or where the cited materials do not support the factual assertions in the [Rule 56.1] Statements, the Court is free to disregard the assertion." *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001) (internal quotation marks and citations omitted).

opposing party [] fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted." *Giannullo v. City of N.Y.*, 322 F.3d 139, 140 (2d Cir. 2003) (citing Local Rule 56.1(c)). Accordingly, the uncontroverted facts in defendant's 56.1 statement are admitted.

B. Factual Background

Plaintiff served on active duty in the United States Navy from February 1990 until February 1993, when she was honorably discharged. [Docket Entry No. 36 (Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment ("Pl. Mem.")), at 2].

On February 28, 2012, plaintiff went to the Department of Veterans Affairs Medical Center, Northport, New York ("Northport VA") for "low back pain" which had "started suddenly on [the previous] Friday when she was getting up from the couch." Def. 56.1 Stmt. ¶ 2; [Docket Entry No. 31 (Declaration of James H. Knapp ("Knapp Decl.")), Ex. B at 6]. The pain suffered by the plaintiff in February 2012 was allegedly "the same kind of pain [she] had when [she] got injured at work a few years [earlier]," which was alleviated by spinal injections. [Docket Entry No. 34 (Declaration of Janie McFarland ("McFarland Aff.")), Ex. C at 1]; Def. 56.1 Stmt. ¶ 1; Knapp Decl., Ex. B at 6. An MRI performed on plaintiff's lumbar spine on February 28, 2012 revealed "degenerative changes of the discs and vertebrae mainly at L4-L5 and L5-S1 with disc herniation..." Def. 56.1 Stmt. ¶ 3; Knapp Decl., Ex. B at 12. Plaintiff was discharged from the Northport VA on March 2, 2012. Def. 56.1 Stmt. ¶ 5; Knapp Decl., Ex. B at 19. Plaintiff indicated at the time of her discharge that "pain [was] much improved." Knapp Decl., Ex. B at 19. At a March 15, 2012 "follow-up" visit to the Northport VA, plaintiff noted that her most recent pain level was a 5/10 and "that pain control with current therapy [was]

acceptable to [her] or [was] being effectively addressed." Def. 56.1 Stmt. ¶¶ 6-7; Knapp Decl., Ex. B at 21.

On April 5, 2012, plaintiff returned to the Northport VA for a physical therapy and rehabilitation consultation. Def. 56.1 Stmt. ¶¶ 8-9; Knapp Decl., Ex. B at 22. Plaintiff alleges that at the time of the April 5, 2012 appointment, she had been "pain-free since March 15, 2012" [Docket Entry No. 1 ("Complaint" or "Compl."), at 5, ¶ 3], but that during this April 5, 2012 examination, the physician at the Northport VA conducted a "knee jerk" examination during which she hit plaintiff's knee four times but plaintiff's knee did not move. Compl., at 6, ¶ 10. Plaintiff contends that when "defendant hit plaintiff's knee a fifth time....defendant 'whacked' plaintiff's knee extra hard!" and "asked plaintiff to bend [her] right leg" (Compl., at 6, ¶¶ 11, 13) but plaintiff "refused to perform [the] task due to past pain experience." *Id.* ¶ 13. After defendant allegedly "insisted that plaintiff lift and bend [her] right leg" (*Id.*), plaintiff "agreed" (*Id.* ¶ 14), and "defendant pushed plaintiff's knee toward plaintiff's chest" (*Id.*), whereupon "[p]laintiff yelled out from pain." *Id.*

On April 7, 2012, plaintiff presented at the Northport VA emergency room experiencing "severe pain in the lower back, center back (spine) area, base of neck, right hip and tingling up right side of back (around kidney area)." *Id.* ¶ 16. The emergency room doctor "injected plaintiff with Toradol to temporarily relieve plaintiff of pain and plaintiff was sent home." *Id.* Plaintiff began treating with Dr. Victor Katz for back and knee pain in June 2012. Def. 56.1 Stmt. ¶ 11; Knapp Decl., Ex. C.

    C.    Procedural History

On June 4, 2012, plaintiff filed a SF-95 Claim for Damage, Injury, or Death with the Department of Veterans Affairs for medical malpractice, claiming that her examination at the

3

Northport VA on April 5, 2012 was negligently performed and caused her harm. *See* Compl., at 7-8. On September 20, 2012, the Department of Veterans Affairs sent plaintiff a letter stating that "[a] review of all the circumstances associated with [her] case does not reveal any negligence on the part of the Department of Veterans Affairs or any of its employees." *Id.* at 7.

On October 12, 2012, plaintiff filed a Complaint asserting claims under the FTCA, 28 U.S.C. §§ 1346(b), 2671-2680. Compl., at 2, ¶ II.B. The complaint alleges that the April 5, 2012 examination of plaintiff "caused injury to [her] left knee, right side of neck, base of neck, right lower back, middle of back (right side), right hip (joint area) and back of right leg" (Compl., at 3, ¶ III.C.) and that these injuries are "a direct result and evidence of defendant's deviation and departure from the accepted practice." *Id.* at 4, ¶ V. Plaintiff further contends that defendant "did not exercise requisite skills when treating plaintiff" and "failed to elicit all information pertinent to treatment for plaintiff." *Id.* at 6, ¶ 17. Construing plaintiff's allegations liberally and to raise the strongest arguments they suggest, the Complaint alleges a claim for medical malpractice in connection with the examination plaintiff received at the Northport VA on April 5, 2012. Plaintiff seeks "monetary compensation in the sum of $12,175,000 together with any other relief [the] Court finds to be just and proper." *Id.* at 4, ¶ V.

To the extent that complaint also alleges ordinary negligence (*see* Compl., at 4, § V ("the defendant carried out limited engagement in negligent and improper manner")), these claims sound in medical malpractice, rather than negligence, because they are related to medical diagnosis and treatment and "involve a matter of medical science or art requiring special skills not ordinarily possessed by lay persons." *Russo v. Shah*, 278 A.D.2d 474, 475, 718 N.Y.S.2d 74 (App. Div. 2d Dep't 2000) ("The distinction between ordinary negligence and malpractice turns on whether the acts or omissions complained of involve a matter of medical science or art

requiring special skills not ordinarily possessed by lay persons or whether the conduct complained of can instead be assessed on the basis of the common everyday experience of the trier of facts.") (citing cases); *see also Bowen v. Patrick*, No. 11-civ-4799, 2012 WL 3743409, at *10-11 (S.D.N.Y. Aug. 29, 2012), *report and recommendation adopted*, No. 11-civ-4799, 2012 WL 4320537 (S.D.N.Y. Sept. 20, 2012) ("A claim is for medical malpractice, rather than ordinary negligence, if the alleged injury is substantially related to medical diagnosis and treatment.") (citations omitted); *Kulak v. Phillips Ambulatory Care Ctr.*, 21 Misc. 3d 1127(A), 873 N.Y.S.2d 512, 2008 WL 4837619, at *2 (N.Y. Civ. Ct. 2008) (finding that plaintiff's allegations of injuries to his right knee caused by defendant doctor during examination sounded in medical malpractice rather than negligence because "defendants' conduct constituted medical treatment or bore a substantial relationship to the rendition of treatment"); *Dilworth v. Goldberg*, 914 F. Supp. 2d 433, 472 (S.D.N.Y. 2012) ("medical malpractice is simply a form of negligence…when allegations in a complaint sound in…medical malpractice, they may be deemed malpractice, rather than negligence") (citations omitted).

Defendant has moved for summary judgment, alleging that plaintiff has failed to offer "evidence that any federal medical provider deviated from the generally accepted standards of medical care during her examination on April 5, 2012, or that her alleged injuries were caused by some negligence on the part of the United States." [Docket Entry No. 33 (Defendant's Memorandum of Law in Support of Motion for Summary Judgment ("Def. Mem.")), at 1-2]. Plaintiff opposes defendant's motion for summary judgment, asserting that the evidence submitted demonstrates that all the elements of medical malpractice have been met. [Docket Entry No. 36 (Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Partial Summary Judgment ("Pl. Mem.")) at 1].

Plaintiff's opposition also raises, for the first time, a lack of informed consent to the examination (Pl. Mem., at 2), but does not allege that the physician "failed to disclose the risks, benefits and alternatives to the procedure or treatment that a reasonable practitioner would have disclosed and…a reasonable person in the plaintiff's position, fully informed, would have elected not to undergo the procedure or treatment." *Zeak v. United States*, No. 11-civ-4253, 2014 WL 5324319, at *13 (S.D.N.Y. Oct. 20, 2014).

Insofar as plaintiff alleges that the defendant "continued with the April 5, 2012 examination by bending Plaintiff's right knee to her chest after Plaintiff refused" (Pl. Mem., at 1) and that "[w]hen a medical provider performs or administers treatment without the consent of the patient, the medical provider commits an assault, for which he is liable in damages" (*Id.* at 2 (citations omitted)), and while a court "may consider statements in [a *pro se* litigant's submissions, such as legal memoranda] to supplement or clarify the plaintiff's pleaded allegations" (*see Sommersett v. City of New York*, No. 09-civ-5916, 2011 WL 2565301, at *3 (S.D.N.Y. June 28, 2011)), plaintiff's new allegations do not "supplement or clarify" her pleaded allegations, but rather contradict statements in the Complaint.[2] Therefore, plaintiff's new allegations do not raise claims of lack of consent or assault.

III. Discussion

A. Standard of Review

"Summary judgment must be granted where the pleadings, the discovery and disclosure

---

[2] In the Complaint, plaintiff states that when defendant "asked [her] to bend right leg…[she] refused to perform task due to past pain experience" but that "when [she] *agreed* defendant pushed plaintiff's knee towards plaintiff's chest." Compl., at 6, ¶¶ 13-14 (emphasis added). *See Armstrong ex rel. Armstrong v. Brookdale Univ. Hosp. & Med. Ctr.*, 425 F.3d 126, 134 (2d Cir. 2005) ("battery applies in the medical context only where the patient or her guardian gives *no* consent and the doctor intends to cause a bodily contact that a reasonable person would find offensive") (citations omitted).

6

materials on file, and any affidavits show 'that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.'" *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (quoting Fed. R. Civ. P. 56(a)). "In ruling on a summary judgment motion, the district court must resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment and determine whether there is a genuine dispute as to a material fact, raising an issue for trial." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (internal quotation marks omitted). "A fact is material if it might affect the outcome of the suit under the governing law, and an issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Ramos v. Baldor Specialty Foods, Inc.*, 687 F.3d 554, 558 (2d Cir. 2012) (internal quotation marks omitted); *see also Crown Day Care LLC v. Dep't of Health and Mental Hygiene of City of New York*, 746 F.3d 538, 544 (2d Cir. 2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Ricci v. DeStefano*, 557 U.S. 557, 586, 129 S.Ct. 2658, 174 L.Ed.2d 490 (2009) (quotation marks and citation omitted); *see also Fabrikant v. French*, 691 F.3d 193, 205 (2d Cir. 2012).

"The moving party bears the burden of establishing the absence of any genuine issue of material fact." *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010). If this burden is met, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown*, 654 F.3d at 358. "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Hayut v.*

*State Univ. of N.Y.*, 352 F.3d 733, 743 (2d Cir. 2003) (quoting *Anderson*, 477 U.S. at 252) (alterations in original). In order to defeat summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts and may not rely on conclusory allegations or unsubstantiated speculation." *Brown*, 654 F.3d at 358 (internal quotation marks and citations omitted).

In reviewing plaintiff's submissions, the Court is mindful that because plaintiff is proceeding *pro se*, her submissions should be held "to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980). Submissions by pro se plaintiffs are to be construed liberally and "interpret[ed]...to raise the strongest arguments that they suggest." *Scott v. Rock*, 2013 WL 360398, at *3 (E.D.N.Y. Jan. 30, 2013) (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)).

B.  Applicable Law

The FTCA authorizes "claims against the United States, for money damages...for...personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). "Under the FTCA, courts are bound to apply the law of the state...where the accident occurred." *Makarova v. United States*, 201 F.3d 110, 114 (2d Cir. 2000). Because the accident occurred in New York, the Court will apply New York law.

To establish a claim of "medical malpractice under New York law, a plaintiff must prove (1) that the defendant breached the standard of care in the community, and (2) that the breach proximately caused the plaintiff's injuries." *Milano by Milano v. Freed*, 64 F.3d 91, 95 (2d Cir.

8

1995) (citing *Arkin v. Gittleson,* 32 F.3d 658, 664 (2d Cir. 1994) (citing New York cases)). *Accord Amsler v. Verrilli,* 119 A.D.2d 786, 786, 501 N.Y.S.2d 411, 412 (App. Div. 2d Dep't 1986) ("The requisite elements of proof in a medical malpractice case are (1) a deviation or departure from accepted practice and (2) evidence that such departure was a proximate cause of injury or damage."). New York law further provides that, "except as to matters within the ordinary experience and knowledge of laymen, ...expert medical opinion evidence is required" to make out both of these elements. *Milano,* 64 F.3d at 91.

An error in medical judgment by itself does not give rise to liability for malpractice (*see Jimerson v. United States,* No. 99-cv-0954, 2003 WL 251950, at *1 (W.D.N.Y. Jan. 13, 2003) (citing *Nestorowich v. Ricotta,* 97 N.Y.2d 393, 398, 740 N.Y.S.2d 668, 767 N.E.2d 125 (2002)), and the "mere fact that a medical procedure was unsuccessful, or had an unfortunate effect, will not support a claim that negligence had occurred." *Perez v. United States,* 85 F. Supp. 2d 220, 227 (S.D.N.Y. 1999), *aff'd,* 8 F. App'x 48 (2d Cir. 2001).

C. Medical Malpractice

On a motion for summary judgment in a medical malpractice action, the defendant "has the initial burden of establishing the absence of any departure from good and accepted medical practice or that the plaintiff was not injured thereby." *Wulbrecht v. Jehle,* 28 Misc.3d 808, 811-12, 902 N.Y.S.2d 910 (Sup. Ct. 2010), *aff'd,* 89 A.D.3d 1470, 933 N.Y.S.2d 467 (App. Div. 3d Dep't 2011) (quotations omitted). This "burden on a motion for summary judgment can be met by the submission of affidavits and/or deposition testimony and medical records which rebut plaintiff's claim of [medical] malpractice with factual proof." *Suib v. Keller,* 6 A.D.3d 805, 806, 774 N.Y.S.2d 608 (App. Div. 3d Dep't 2004) (citing *Horth v. Mansur,* 243 A.D.2d 1041, 1042, 663 N.Y.S.2d 703 (App. Div. 3d Dep't 1997)). The burden then shifts to plaintiff to "rebut

defendant's showing by demonstrating, typically through expert medical opinion, a deviation from accepted practice and that the deviation was a proximate cause of the injury." *Suib*, 6 A.D.3d at 806 (citing *Giambona v. Stein*, 265 A.D.2d 775, 776, 697 N.Y.S.2d 399 (App. Div. 3d Dep't 1999)).

Defendant has satisfied the burden of establishing the absence of any departure from good and accepted medical practice. In support of its motion for summary judgment, defendant relies upon the Complaint (Knapp Decl., Ex. A), excerpted medical records of plaintiff (*Id.*, Exs. B-C), and the deposition of Dr. Victor Katz, plaintiff's treating physician, dated March 13, 2014. *Id.*, Ex. D ("Katz Dep."). Dr. Katz testified that he believed there was no deviation from the standard of care during plaintiff's treatment at the Northport VA. Dr. Katz stated that "it would not be" his opinion that the treatment plaintiff received at the Northport VA deviated from the standard of care (Katz Dep. at 14:16-19), and that the Northport VA "did an exam and that was consistent with the medical exam of the back." Katz Dep. at 14:25-15:2. The deposition of Dr. Katz also "refute[s] by specific factual reference the allegations of malpractice made by plaintiff." *Alvarez v. Prospect Hosp.*, 68 N.Y.2d 320, 326, 501 N.E.2d 572 (1986). With respect to plaintiff's allegations regarding the Northport VA physician injuring plaintiff's knee when, in a "knee-jerk" examination, she "whacked plaintiff's knee extra hard" (Compl., at 6, ¶¶ 10-11), Dr. Katz stated that he had "never heard of such an injury occurring from a reflect hammer striking the knee." Katz Dep. at 17:4-6. With respect to plaintiff's allegations that defendant caused her injuries by "pushing [her] knee toward [her] chest" (Compl., at 6, ¶ 14), Dr. Katz testified that he didn't "think a herniated disk [sic] on a basis of an exam, you could sometimes make it a little worse, but certainly it's not malpractice." Katz Dep. at 8: 11-13.

The excerpts of plaintiff's medical records proffered by defendant also evidence the absent of any departure from good and accepted medical practice. The medical records indicating that another physician, upon review of the examining physician's note describing plaintiff's appointment and physical exam, "agree[d] with the resident assessment and plan of care" (Knapp Decl., Ex. B at 22) belie the notion that a reasonably prudent doctor would have acted differently. Additionally, a note in plaintiff's medical records from the examining physician states that she "spoke to pt [sic] concerning her lower back pain exacerbation" and that the "[s]eated Straight leg raise is *a standard protocol* when evaluating Lower back pain and radiculopathy." *Id.* at 23 (emphasis added). This evidence is sufficient to demonstrate the absence of any departure from the standard of care in connection with plaintiff's examination at the Northport VA on April 5, 2012. *See Alvarez*, 68 N.Y.2d at 326-27 (finding defendant's evidence which consisted of a personal affidavit, an affirmation of defendant's attorney, and defendant's deposition testimony "was sufficient to establish his entitlement to judgment as a matter of law and the burden thus shifted to plaintiff to produce evidentiary proof in admissible form establishing the existence of material questions of fact.").

Given defendant's prima facie showing that there was no departure from accepted medical practice during the April 5, 2012 examination, the burden shifted to the plaintiff to "demonstrate the existence of a triable issue of fact with respect to [that] issue[]." *LeMaire v. Kuncham*, 102 A.D.3d 659, 660, 957 N.Y.S.2d 732, 733 (App. Div. 2d Dep't 2013); *see also Sitts v. U.S.*, 811 F.2d 736, 741 (2d Cir. 1987) ("especially in light of the deposition testimony…that accepted medical practices were followed in the…operation, [plaintiff] would be required to present expert medical testimony at trial to establish a prima facie case of medical malpractice"). Plaintiff's evidence consists of excerpts of her medical records (McFarland Aff.,

11

Exs. A-B), the Statement of Dr. Jerrold M. Gorski dated December 23, 2013 (*Id.*, Ex. C ("Gorski Stmt.")), the deposition transcript of Dr. Victor Katz dated March 13, 2014 (*Id.*, Ex. D ("Katz Dep.")), a copy of the complaint (*Id.*, Ex. E), and a personal video recording of the plaintiff describing her claims. *Id.*, Ex. F. Viewing this evidence in the light most favorable to plaintiff, the Court finds that plaintiff has failed to set forth specific facts demonstrating a genuine issue as to whether the April 5, 2012 examination involved a departure from standard medical practice.

In fact, the evidence submitted by plaintiff demonstrates that there was no breach of the accepted standard of care by the Northport VA physician during the April 5, 2012 examination. As noted above, the deposition testimony of Dr. Katz supports defendant's position that the physician "did an exam and that was consistent with the medical exam of the back." Katz Dep. at 14:25-15:2. The second medical opinion offered by plaintiff, a letter from Dr. Jerrold Gorski, states that plaintiff has "evidence of underlying and pre existing [sic] arthritis in the right hip" that "may have been temporarily exacerbated while performing *what I would believe is a normal physical examination.*" Gorski Stmt. at 2 (emphasis added). Dr. Gorski went on to state that "[t]his type of physical examination is *normal and customary* and is designed to elicit complaints of pain. That is how physician's [sic] localize a problem." *Id.* at 3 (emphasis added). Rather than contradicting defendant's assertion that there was no breach of the standard of care here, this evidence supports a finding that the April 5, 2012 examination was consistent with generally accepted medical practices. The additional evidence proffered by plaintiff–the Complaint, excerpts of her medical records and her video testimony–fails to offer anything more than conclusory allegations regarding defendant's breach of the standard of care. Plaintiff was required to produce expert medical evidence "which would deny defendants' contention that their treatment was in accord with accepted medical standards in this professional community."

*Goodman v. Emergency Hosp.*, 96 Misc. 2d 1116, 1117-18, 410 N.Y.S.2d 511 (Sup. Ct. 1978) (granting defendant's motion for summary judgment where plaintiff failed to "produce a statement from an expert which would deny defendants' contention that their treatment was in accord with accepted medical standards in this professional community" which was necessary "to support her conclusory allegation of a deviation from such standards and that the deviation proximately caused her injuries."). Plaintiff's failure to offer any evidence to rebut defendant's assertion that the April 5, 2012 examination at the Northport VA was consistent with the standard of care in the community is fatal to her medical malpractice claim. *See Milano*, 64 F.3d at 91 (to establish a claim of medical malpractice, plaintiff must prove "that the defendant breached the standard of care in the community").[3]

Here, "the record taken as a whole could not lead a rational trier of fact to find for [plaintiff]" and therefore "there is no genuine issue for trial." *Ricci*, 557 U.S. at 586. Plaintiff has failed to produce any evidence to "show what the accepted standards of practice were and that defendant deviated from those standards or failed to apply whatever superior knowledge he had for the plaintiff's benefit." *Sitts*, 811 F.2d at 739. The statements from medical professionals that plaintiff has submitted provide evidence that defendant did not breach the accepted standard of care. Because plaintiff has failed to raise a triable issue of fact as to

---

[3] Because the Court finds that defendant did not breach the standard of care, it need not reach the issue of causation, the second element for a medical malpractice claim under New York law. *See Jimerson*, 2003 WL 251950, at *5 ("Inasmuch as this Court finds that [doctor] satisfied the applicable standards of care with respect to both his diagnosis and treatment of [plaintiff], there is no need to address any other issues such as proximate causation or subsequent events..."). However, on the issue of causation, the Court notes that Dr. Gorski also stated it was his opinion that the physical exam of plaintiff "did not cause any subsequent injury. At most it may ha e [sic] been a mild temporary flare which would be expected to subside in a matter of days. Allegations elsewhere are in my opinion completely due to underlying and pre-existing arthritis and not to any permanency caused on that examination, residuals, etc." Gorski Stmt. at 3.

13

whether defendant's conduct constituted a departure from the accepted standard of care, defendant is entitled to summary judgment.

III. Conclusion

Based upon the foregoing, defendant's motion for summary judgment is granted. The Clerk of the Court shall enter judgment accordingly and close this case.

**SO ORDERED.**

s/ Sandra J. Feuerstein

Sandra J. Feuerstein
United States District Judge

Dated: November 14, 2014
       Central Islip, New York